**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMAR SPENCER, on behalf of himself and all others similarly situated,<br><br>              Plaintiff,<br><br>        vs.<br><br>CAMPBELL SOUP COMPANY,<br><br>             Defendant. | **Civil Action No.: 1:24-cv-9882**<br><br><br><br>**COMPLAINT – CLASS ACTION** |

Plaintiff Jamar Spencer ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Campbell Soup Company ("Campbell" or "Defendant") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

<u>**NATURE OF THE ACTION**</u>

1.      It is both unfair and unlawful for entities like Campbell to impose punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Defendant's practice of charging a "tobacco surcharge" that unjustly forces certain employees to pay higher premiums for their health insurance. Such surcharges violate the Employee Retirement Income Security Act ("ERISA") and its anti-discrimination provisions by unfairly targeting employees based on their health status, such as tobacco use.

2.      Tobacco surcharges have become more prevalent in recent years, but to be lawful, they must adhere to specific rules set forth by ERISA and related regulations. These rules mandate that employers cannot charge extra fees based on tobacco use unless those fees are part of a compliant wellness program that offers a reasonable alternative standard to all participants. While ERISA allows for wellness programs that incentivize healthy behavior, these programs must meet strict criteria.

3.      First, wellness programs must genuinely promote health, not merely serve as a revenue generator. Second, the program must provide a "reasonable alternative standard" to individuals for whom it is difficult to meet the initial health requirement, such as quitting tobacco use. This reasonable alternative could include participation in a smoking cessation program, through which participants can avoid the tobacco surcharge for the entire plan year. Most importantly, employers must clearly communicate the availability of this alternative standard in all relevant plan materials.

4.      Notwithstanding, the Campbell Soup Company Health and Welfare Benefit Plan (the "Plan") fails to offer the requisite reasonable alternative standard as mandated by law. Furthermore, even if such an alternative standard existed, Defendant has neglected to adequately inform employees of its availability, an alternative that would allow employees to circumvent the surcharge for the entirety of the year. Further, participants must also be notified that recommendations of the person's physician will be accommodated, which Plan materials fail to do. This failure to communicate is common across all Plan communications. As a result, the Defendant's tobacco surcharge is in violation of ERISA's anti-discrimination provisions. It imposes additional costs on employees who use tobacco products without satisfying the legal criteria for a bona fide wellness program.

5.      Plaintiff Spencer was an employee of Snyders-Lance, Inc., a subsidiary of Campbell, and was required to pay the tobacco surcharge to maintain health insurance coverage under the Plan in 2024. The surcharge has imposed an additional financial burden on him and other similarly situated employees, despite Campbell's failure to comply with the legal requirements for wellness programs under ERISA.

6.      Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover the unlawfully charged tobacco surcharges and to obtain plan-wide equitable relief to prevent Campbell from continuing to collect these improper fees in violation of ERISA. Under 29 U.S.C. § 1109, Campbell, as a fiduciary of the Plan, has a legal obligation to act in the best interests of its participants and to comply with federal law. Plaintiff also seeks appropriate equitable relief under 29 U.S.C. § 1132(a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

7.      Plaintiff Jamar Spencer is, and at all times mentioned herein was, an individual citizen of the State of Kentucky residing in the County of Jefferson. Mr. Spencer was an employee of Campbell until earlier this year who paid the tobacco surcharge in the form of a surcharge associated with the health insurance offered through his employer during the applicable limitations period.

8.      Plaintiff Spencer is a participant in the Plan pursuant to 29 U.S.C. § 1102(7).

9.      Campbell is a publicly traded corporation headquartered in Camden, New Jersey. Campbell is a leading producer and marketer of canned soups and other food and beverage products, distributing its goods throughout the United States and internationally. Campbell markets its products under a variety of well-known brand names, including Campbell's,

3

Pepperidge Farm, V8, Swanson, and Prego, and engages in widespread commerce, supplying goods to major retailers and consumers.

10.    At all times relevant to this lawsuit, Defendant sponsored, maintained, and managed the Plan. Recently filed public documents show the Plan has over 14,000 active participants as of January 1, 2023. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION AND VENUE

11.    The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and §28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

12.    This Court has personal jurisdiction over Defendant because it is headquartered in this District, and Plaintiff's claims and the claims of all others similarly situated arise from the acts and omissions of Defendant with respect to its activities and conduct concerning Plaintiff and the Class in the State of New Jersey.

13.    Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because this is the District in which Defendant has its principal place of business and where a substantial portion of the statutory breach took place. Additionally, Defendant conducts business and can be found in this District.

## FACTUAL BACKGROUND

## I.    DEFENDANT'S TOBACCO SURCHARGE VIOLATE ERISA'S ANTI-DISCRIMINATION RULE

14.    To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating

against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1).

15.    Defendant's tobacco surcharge violates this provision. Plaintiff and all others similarly situated were required to pay an additional premium or contribution per year based on a "heath status-related factor" — their use of tobacco products. Plaintiff, and all others similarly situated, were forced to pay the tobacco surcharge to remain insured under the Plan.

16.    Specifically, Defendant imposes an unlawful tobacco surcharge on employees and their spouses/domestic partners who are enrolled in the Plan and have used tobacco products within the last 12 months. Further, Defendant charged participants higher premiums for Voluntary Life and Accidental Death and Disability ("AD&D") Insurance based on their status as a tobacco user. Defendant requires employees to indicate their own tobacco usage as well as that of their enrolled spouses or domestic partners during enrollment.

17.    In 2024, Campbell charged participants $12.50 per week or $650 per year. Tobacco products subject to the surcharge include e-cigarettes, cigarettes, cigars, and smokeless tobacco. Under the Plan, Plaintiff paid $12.50 each week. The exact amount of the higher premiums for Voluntary Life and AD&D Insurance as a result of being a tobacco user is unknown at this time.

18.    During this period, Defendant controlled the tobacco surcharge, including determining which participants were charged and by withholding the tobacco surcharge from a

participant's paycheck. Rather than placing these funds in a trust account, Defendant collected the amounts of the surcharge and included the funds in its own assets.

19.    The Plan offered by Defendant requires individuals to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any tobacco use and fails to meet the safe harbor exception.

## II.    DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS

20.    Defendant failed to provide a compliant wellness program for tobacco-using participants. As discussed further below, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard: in this case, being tobacco-free. The standard is intended to ensure that participants have an opportunity to avoid surcharges, such as tobacco-related premiums, by participating in wellness programs like smoking cessation programs. Additionally, employees must receive the full reward once they meet the alternative standard. To be clear, there must be a way for participants to avoid the surcharge for the full plan year.

21.    ERISA offers a limited exception to its general rules by providing safe harbor for certain wellness programs. *See* 29 U.S.C. § 1182(b)(2)(B). This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in these wellness programs. One way for plans to take advantage of the safe harbor provisions while charging participants additional surcharges is to offer programs designed to increase the well-being of the person such as, for example, smoking cessation program. The regulations covering health-contingent wellness programs require that the wellness programs, like smoking cessation programs, satisfy certain criteria. *See* 78 FR 33158, 33159.

22.     A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding what "reasonable" health-contingent programs must include. To qualify under ERISA, there are three basic requirements: First, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods; second, everyone in a similar situation must have a chance to earn the "full reward" — in other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard; third, the program must be disclosed "in *all* plan materials" describing the reward and explaining the availability of a reasonable alternative standard or waiver. 29 C.F.R. § 2590.702(f)(4) (emphasis added).

23.     Defendant's tobacco surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard, or that it provide notice of a reasonable and alternative standard. As a result, it cannot meet the elements of this affirmative defense.

24.     While Campbell offers the "Quit for Life" tobacco cessation program as part of its wellness initiative, the 2024 Summary Plan Description ("SPD") does not sufficiently explain the process by which employees, their spouses/domestic partners can avoid or remove the surcharge retroactively. Specifically, Campbell's SPD allows participants to avoid the surcharge if they complete the Quit for Life program but on a *prospective* basis only and only for those who complete the program. However, there is no indication that the surcharge is removed *retroactively* for the months already paid or for those who fail to complete the program. As the 2024 Benefit Guide details documents states:

> The Quit For Life Program . . . is designed to help you and your eligible family members stop using tobacco products. The Program, including the cost of nicotine patches and gum, is provided at no additional cost to you or your family.
>
> The tobacco surcharge, which is applied for any covered employee or spouse/domestic partner who is a tobacco user, will be removed ***on a go-forward basis if and only if the Quit For Life Program is completed by all covered tobacco users during the program year***. Participants complete the program when they complete five calls with the Quit For Life team..[1]

25.    The Plan creates an unfair and discriminatory process by only allowing participants who complete the Quit for Life program to have the surcharge refunded on a prospective basis. Participants who complete the program may stop the surcharge for the remainder of the plan year but are not retroactively reimbursed for premiums already paid. This violates ERISA's requirement that participants receive the "***full reward***" upon satisfying the alternative standard, as it unfairly denies retroactive relief to participants who complete the program.

26.    Defendant's imposition of higher premiums for Voluntary Life Insurance and AD&D Insurance based on tobacco use further violates ERISA's anti-discrimination provisions. Specifically, participants who elect these additional coverage options are required to pay premiums determined by nicotine versus non-nicotine rates. By charging participants these additional premiums based solely on tobacco use, Defendant unfairly discriminates against certain participants.

27.    Defendant, during the applicable limitations period, maintained exclusive control over the tobacco surcharge and additional premiums, including determinations as to which participants were and continue to be required to pay the surcharge and higher premiums. Defendant withheld the amount of the surcharge from participants' paychecks and held these funds in its own

---

[1] 2024 Benefits Guide at 62.

accounts, rather than deposit them into a trust account. By depositing these ill-gotten gains into its own accounts, Defendant has dealt with assets of the Plan for their own interests, in violation of ERISA. Defendant has a fiduciary responsibility to ensure that these funds are used to support coverage for its employees' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendant has increased its own bottom line, allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards.

28.    ERISA requires that employers clearly communicate the availability of reasonable alternative standards to all employees in all plan materials. Defendant's plan documents fail to adequately communicate this option, instead providing incomplete or misleading notice. Specifically, the documents inform participants that quitting tobacco through the Quit for Life program can avoid the surcharge but only on a go-forward basis. This failure to clearly disclose the availability of a full reward upon satisfying an alternative standard for all participants violates ERISA's notification requirements and misleads participants regarding their rights under the Plan.

29.    Because the Plan fails to provide a compliant reasonable alternative standard that allows all participants to receive the "full reward"— avoiding the surcharge for the entire plan year — Defendant's wellness program fails to provide reasonable alternative standards. In other words, while Defendant offers a quit-tobacco program, only employees who complete it can avoid the surcharge and, even then, can avoid it only on a go-forward basis with no retroactive reimbursement. On these bases, the Plan violates ERISA's anti-discrimination provisions.

## III.    DEFENDANT FAILED TO NOTIFY PARTICIPANTS OF A REASONABLE ALTERNATIVE STANDARD

30.    To qualify as a compliant wellness program under the regulations, employers must provide notice of the availability of a reasonable alternative standard. The regulations require plans

9

and issuers to "disclose *in all plan materials* describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(3)(v) (emphasis added); see also 42 U.S.C. § 300gg-4(j)(3)(E). The regulations make clear that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description, as well as in the applicable governing plan documents (which must be provided upon request), if compliance with the wellness program affects premiums, cost sharing, or other benefits under the terms of the plan." 78 FR 33158, 33166 n. 24. In addition, the applicable regulations require that "[t]he plan or issuer . . . disclose in all plan materials describing the terms of an activity-only wellness program . . . contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(4)(v).

31.     Upon information and belief, Defendant does not include adequate notification in *all* Plan materials. While the 2024 SPD document contains references to materials describing the "Quit for Life" program, it fails to notify participants of the availability of a reasonable alternative standard that would eliminate the tobacco surcharge for the entire plan year, in violation of ERISA. This document does not inform employees that completing the program will entitle them to the full reward of avoiding the surcharge for the entire year. Instead, employees are led to believe that the surcharge can only be avoided on a go-forward basis, which discourages participation and

violates ERISA's requirement that participants be clearly informed of their ability to avoid surcharges through reasonable alternative standards.

32.    Defendant's failure to adequately disclose this information in all Plan materials deprives employees of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on employees who could otherwise meet the requirements of the alternative standard.

33.    Further, it does not appear as if Defendant included a statement that the recommendations of an individual's physician will be accommodated, as required. Upon information and belief, none of Defendant's plan materials reference the disclosure regarding a participant's physician's recommendations.

34.    Thus, while there appears to be an alternative means to avoid the tobacco surcharge on a prospective basis only, there is no mention of a reasonable alternative standard to avoid the surcharge for the entire Plan year and there is no mention of how the recommendations of participants' physicians will be accommodated. Accordingly, the tobacco surcharge wellness program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

35.    Defendant, by failing to comply with its obligations to provide and notify participants of the availability of reasonable alternative standards by which Plan participants can avoid the tobacco surcharge and receive the "full reward," has violated ERISA's anti-discrimination provisions.

## CLASS DEFINITION AND ALLEGATIONS

36.    Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

37.    Plaintiff proposes the following Class and Subclass definition, subject to amendment as appropriate:

> **Tobacco Surcharge Class** (the "**Tobacco Class**")
> All individuals residing in the U.S. who, during the applicable statute of limitations, paid a tobacco surcharge that was not fully reimbursed, in connection with their participation in a health or welfare plan offered by Defendant.
>
> **Voluntary Life Insurance Subclass (the "Voluntary Life Subclass")** All Tobacco Class members who paid higher premiums for Voluntary Life Insurance based on their or their spouse's/domestic partner's status as a tobacco user, and who were not fully reimbursed for those additional premiums, in connection with their participation in a welfare plan offered by Defendant.
>
> **AD&D Insurance Subclass (the "AD&D Subclass")** All Tobacco Class members who paid higher premiums for Dependent Life Insurance based on their spouse's/domestic partner's or dependent's status as a tobacco user, and who were not fully reimbursed for those additional premiums, in connection with their participation in a welfare plan offered by Defendant.

38.    Excluded from the Class is Defendant, any parent entities, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

39.    Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

40.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

41.    **<u>Numerosity</u>**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains hundreds of participants who have

been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

42. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

    a.  Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

    b.  Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

    c.  Whether Defendant notified participants in all Plan materials of the avenues by which participants could avoid the tobacco surcharge and obtain the "full reward";

    d.  Whether Defendant notified participants in *all* Plan materials of the reasonable alternative standards by which participants could avoid the tobacco surcharge for the entire plan year;

    e.  Whether Defendant notified participants in all Plan materials of the fact that their personal physician's recommendations would be accommodated;

    f.  Whether Defendant's tobacco surcharge violates ERISA and the applicable regulations.

    g.  Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge and higher premiums;

    h.  Whether Defendant breached their fiduciary duties by failing to periodically review the terms of its Plan to ensure compliance with ERISA and applicable regulations.

43. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff's are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

44.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

45.    **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

46.    Plaintiff on behalf of himself and the Class seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the entire Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are

issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE
(Violation of 29 U.S.C. § 1182)

47.    Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1–46 of this Complaint.

48.    Defendant improperly imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums of up to $650 per participant annually (and their dependents) who use tobacco, and by charging those participants higher premiums for additional insurance coverage Defendant is charging some participants more than others based on a health status-related factor, in violation of ERISA § 702(b), 29 U.S.C. § 1182(b).

49.    29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." Because the Plan imposes a discriminatory surcharge on tobacco users, without offering a compliant wellness program, Defendant discriminates against individuals like Plaintiff who use tobacco products.

50.    Defendant's imposition of the tobacco surcharge is a violation of ERISA § 702 and the applicable regulations thereunder, including but not limited to 29 C.F.R. § 2590.702. Further, Defendant's failure to provide a reasonable alternative standard to the smoking cessation program

it offers to participants constitutes a failure by Defendant to provide participants with a compliant wellness program. Additionally, only certain participants can avoid the surcharge upon completion of the smoking cessation program by a certain date. By failing to provide an avenue for participants like Plaintiff to obtain the "full reward" of the wellness program, Defendant failed to provide a compliant wellness program.

51.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

52.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

## <u>COUNT II</u>
## FAILURE TO NOTIFY OF REASONABLE ALTERNATIVE STANDARD FOR AVOIDING TOBACCO SURCHARGE
### (Violation of 29 U.S.C. § 1182 and 29 C.F.R. § 2590.702)

53.     Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1–46 of this Complaint.

54.     To enroll in the Defendant's Plan, Plaintiff and all those similarly situated were required to pay a tobacco surcharge in the amount of roughly $12.50 each week, or roughly $650 per year.

55.    29 U.S.C. § 1182(b) prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual."

56.    Defendant improperly imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory premiums of up to $12.50 each week on participants (and their dependents) who use tobacco, and by charging higher premiums for coverage Defendant charges some participants more than others based on a health status-related factor in violation of ERISA § 702(b), 29 U.S.C. § 1182(b).

57.    Applicable regulations provide an exception for wellness programs, provided they comply with the requirements outlined in the regulations. *See* 29 C.F.R. § 2590.702(f). Defendant did not give statutorily required notice of a compliant reasonable alternative standard in that neither the Plan document nor the SPD for the Plan during the applicable limitations period detailed a smoking cessation program such that a participant could avoid paying the tobacco surcharge for the entire plan year, in violation of the applicable regulations. 29 C.F.R. § 2590.702(f)(3)(E)(v).

58.    Defendant's failure to notify participants of a reasonable alternative standard prevents it from asserting an affirmative defense on that basis under the statutory safe harbor protection.

59.    Defendant's tobacco surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor in assessing an unlawful surcharge, in violation of 29 U.S.C. §1182(b).

60.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

61.     Plaintiff and those similarly situated were required to pay an unlawful fee and higher premiums for other coverage, and Defendant collected those improper fees and deposited them into its own accounts.

62.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

## COUNT III
### BREACH OF FIDUCIARY DUTY
**(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)**

63.     Plaintiff re-alleges and incorporates herein by reference all allegations in paragraphs 1–46 of this Complaint.

64.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), imposes several fiduciary duties on Plan Administrators, including the duty to act loyally and "solely in the interest of the participants and beneficiaries[,]" the duty to act with "care, skill, prudence, and diligence" — which includes ensuring that benefits paid pursuant to a defined benefit plan conform with ERISA's statutory requirements — and the duty to act "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with* the provisions of" subchapters I and III of ERISA. 29 U.S.C. § 1104(a)(1) (emphasis added).

65.     Throughout the applicable limitations period, Defendant was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting management of the Plan and the disposition of its assets by holding the funds collected from the tobacco surcharge in its own accounts, and had discretionary authority and discretionary responsibility in the administration of the Plan.

66.     Defendant breached its fiduciary duties by assessing and collecting the tobacco surcharge and higher premiums on additional coverage in violation of ERISA and the applicable regulations. To that extent, Defendant breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. Defendant acted disloyally by causing Plaintiff and members of the Class to pay a tobacco surcharge that was unlawful.

67.     Defendant retained the amounts of the surcharges thereby increasing its own monies. By mingling the additional money received from the surcharges with its own assets, Campbell dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). As a result of the imposition of the unlawful and discriminatory tobacco surcharge, Campbell enriched itself at the expense of the Plan, resulting in it receiving a windfall.

68.     Defendant also breached its fiduciary duties by: failing to act solely in the interest of participants (and their beneficiaries) in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(A); administering a Plan that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the Plan and related plan materials, including the Plan's wellness

19

program and its compliance with the regulatory framework, as well as any notices regarding the availability of compliant reasonable alternative standards (or lack thereof). These breaches caused Plaintiff and the Class to incur unlawful and discriminatory surcharges.

69.     As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

70.     Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan or a constructive trust all profits it acquired through its violations alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representatives for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharge imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharge within the applicable limitations period;

D. A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, following terms of the Plan that violated

ERISA's anti-discrimination provisions and for failing to adequately monitor and review the terms of the Plan to ensure they complied with ERISA;

E.  An Order requiring Defendant to provide an accounting of all prior payments of the surcharge under the Plan;

F.  Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G.  Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H.  Restitution of all amounts Defendant collected as unlawful surcharges;

I.  Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharge;

J.  Relief to the Plan from Defendant for its violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharge is unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L.  An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.  Any other relief the Court determines is just and proper.

Dated: October 17, 2024                          Respectfully submitted,

                                                 /s/ *David J. DiSabato*
                                                 _____

                                                 **SIRI & GLIMSTAD LLP**

                                                 David J. DiSabato
                                                 Oren Faircloth (*pro hac vice* to be filed)
                                                 745 Fifth Avenue, Suite 500
                                                 New York, New York 10151
                                                 Tel: (212) 532-1091
                                                 E: ddisabato@sirillp.com
                                                 E: ofaircloth@sirillp.com

                                                 *Attorneys for Plaintiff and the Proposed Class*

22